**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| Anthony Avery, | ) | Case No.: 0-23-cv-00222-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| MG Logistics, Inc.; K2 Express, Inc.; | ) | |
| and TQ Logistics, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on cross-motions for summary judgment filed by Plaintiff Anthony Avery (ECF No. 66), Defendant TQ Logistics, Inc. (ECF No. 67), and Defendant K2 Express, Inc. (ECF No. 68). The motions have all been fully briefed and are ripe for the court's review. (*See* ECF Nos. 73, 74, 75, 76, 78, 80, 81, 82, 83, & 84). The court grants in part and denies in part the motions as set forth below.

## I.    RELEVANT BACKGROUND

This action arises from an incident that occurred on March 27, 2021, at New Indy Container Board ("New Indy") in Catawba, South Carolina. Plaintiff, performing his duties as a shipping clerk for New Indy, was injured when a trailer he was loading with a roll of paper fell over while he was inside. Plaintiff seeks to recover compensatory and punitive damages for the alleged negligence and gross negligence of the trailer's owner, MG Logistics, Inc. ("MGL"); the entity that performed the annual inspection of the trailer, K2

1

Express, Inc. ("K2"); and New-Indy's shunting[1] and yard-management services provider, TQ Logistics, Inc. ("TQL").[2] The following summary describes the events leading up to the incident. The facts are undisputed unless otherwise noted. As stated below, the court views the facts in the light most favorable to the non-moving party in analyzing each motion.

Defendant MGL is a trucking firm and, in 2017, leased the trailer at issue from Stoughton Trailers, LLC. On July 11, 2020, the trailer was damaged and taken to Innovative Truck Repair for service. Innovative Repair replaced the landing gear on the trailer, but did not install any lateral diagonal bracing as specified in the installation manual. The parties dispute whether diagonal bracing was required and whether the absence of such bracing was the root cause of the accident. After the repair, in December 2020, MGL took the trailer to K2 for inspection and maintenance as it had previously for maintenance and annual inspections required by the Federal Motor Carrier Safety Act ("FMCSA"), 49 U.S.C. §§ 13101, *et seq.*, and its regulations ("FMCSRs").

In March 2021, MGL contracted through TQL, a freight broker New Indy uses to manage its trailer yard, to haul a load of commercial paper rolls from New Indy in South Carolina to Wisconsin. When MGL's driver, Tellis Hatton, arrived at New Indy, the trailer was inspected by TQL's employee, Calvin Belton. Belton was employed as a "switcher," whose role was to transport cargo trailers back and forth between New Indy's trailer lot

---

[1] TQL's shunting services involved moving trailers between the trailer lot and the loading dock at the New Indy mill. (*See* ECF No. 66-22 at 15–19).

[2] The manufacturer of the trailer, Stoughton Trailers, LLC, was also sued; however, it has been dismissed by stipulation. (*See* ECF No. 57).

and loading dock.[3] Belton then delivered the trailer to the loading area for Plaintiff to load. Plaintiff worked as a shipping clerk and was responsible for loading paper rolls into commercial trailers using a forklift-like device known as a grab truck. As Plaintiff entered the trailer on the grab truck and approached the back with the paper roll, the trailer's landing gear collapsed, and the trailer fell over on its side with Plaintiff inside. According to Plaintiff, the event caused serious injury to his lower back, resulting in a two-level spinal fusion and permanent nerve damage. Plaintiff alleges the injuries have disabled him from working. While the parties do not dispute that Plaintiff sustained injuries as a result of the accident, the Parties dispute the extent of the damages that can be attributed to the accident.

## II.      LEGAL STANDARD

### A.   <u>Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

---

[3] Employees in these positions are referred to in the trucking industry as yard or lot "switchers," "jockeys," "movers," "hostelers," or "shifters." (ECF No. 11 ¶ 30).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## B.   <u>Negligence</u>

Because this is a negligence action based on diversity jurisdiction, South Carolina law applies. *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) ("Federal courts in diversity cases apply the law of the forum state."). To prevail on a negligence claim in South Carolina, a plaintiff must prove: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages sustained by the plaintiff. *Andrade v. Johnson*, 356 S.C. 238, 245, 588 S.E.2d 588, 592 (2003) (citation omitted).

In a negligence action, "[t]he existence of a duty owed is a question of law" for the court to decide. *Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 11–12, 620 S.E.2d 326, 329 (2005) (citations omitted). Whether a defendant breached its duty of care,

however, is a question of fact for the jury. *See Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 484 (D.S.C. 2014) (citing *Dorrell v. S.C. Dep't of Transp.*, 361 S.C. 312, 325, 605 S.E.2d 12, 18 (2004)). The applicable "standard of care may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 140, 638 S.E.2d 650, 659 (2006).

"Proximate cause requires proof of causation in fact and legal cause." *Hurd v. Williamsburg Cnty.*, 363 S.C. 421, 428, 611 S.E.2d 488, 492 (2005). Causation in fact is demonstrated by establishing the plaintiff's injury would not have occurred "but for" the negligent conduct of the defendant. *Id.* Legal cause is shown by establishing foreseeability, meaning that an injury is the natural and probable consequence of the alleged negligent act. *Id.* "The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury." *Madison*, 371 S.C. at 147, 638 S.E.2d at 662.

### III.    ANALYSIS

#### A.    Plaintiff's Motion for Summary Judgment

Plaintiff avers that there is no genuine dispute that Defendants were responsible for ensuring the trailer was safe for its intended commercial use; the trailer's landing gear lacked the requisite diagonal cross-bracing rendering it unsafe; and that the trailer ultimately tipped over due to its lack of diagonal cross-bracing causing Plaintiff's injuries. (ECF No. 66 at 8). Thus, Plaintiff argues he is entitled to summary judgment finding

Defendants negligent and liable for damages arising from the incident. Plaintiff produced an expert report from Michael O'Dell supplying a photograph of the subject trailer's landing gear after the accident:



(ECF No. 66-11 at 5). O'Dell's report also provides exemplary photographs of trailers with the type of cross-bracing he asserts as necessary to prevent side-to-side movement while the landing gear legs are down:

 

(ECF No. 66-11 at 5).

Defendants do not deny owing a duty of care to Plaintiff, or that Plaintiff suffered injuries as a result of the trailer's collapse. Defendants do dispute, however, the scope of their respective duties of care, whether their conduct breached their respective duties, the

causation of the trailer collapse, and the extent to which Plaintiff's injuries stem from the collapse.

    1.   <u>Duty and Breach</u>

        *a. MG Logistics*

Plaintiff insists that there is no genuine dispute that MGL had a duty to ensure the trailer was safe for its intended commercial use, and that it breached this duty by delivering the trailer for loading despite the absent diagonal cross-bracing. (ECF No. 66 at 7).

First, Plaintiff contends MGL is statutorily liable for Innovative Repair's negligence under 49 C.F.R. § 396.3. (ECF No. 66 at 6). Under this section, a "motor carrier" is required to "systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired or maintained, all motor vehicles . . . subject to its control." 49 C.F.R. § 396.3(a). MGL maintains that it was under no duty to directly evaluate the necessary equipment related to landing gear, and any negligence in repairing the trailer belongs solely to Innovative Repair. (ECF No. 76 at 3). MGL further maintains that it complied with its statutory requirements by outsourcing its inspection responsibilities to K2, (*id.* at 4), and that there is no evidence that MGL's driver conducted a negligent inspection, (*id.* at 8). Plaintiff maintains that MGL cannot outsource its statutory responsibility and remains accountable for ensuring the safety of its equipment.

Neither party provides any case law on this issue. The FMCSRs expressly provide "[i]n lieu of the self-inspection provided for in paragraph (d) of this section, a motor carrier or intermodal equipment provider responsible for the inspection may choose to have a commercial garage, fleet leasing company, truck stop, or other similar commercial business

perform the inspection as its agent[.]" 49 C.F.R. § 396.17(e). The court therefore agrees with MGL's contention that it is not required to directly perform the inspections, as allowed by the FMCSRs. However, 49 C.F.R. § 396.17(g) explicitly states "[i]t is the responsibility of the motor carrier or intermodal equipment provider to ensure that all parts and accessories on commercial motor vehicles intended for use in interstate commerce for which they are responsible are maintained at, or promptly repaired to, the minimum standards set forth in appendix A to this part." The issue here is not whether the inspections were conducted, but whether they were conducted in a negligent manner, allowing the trailer to stay in use despite it being unsafe for use. Although MGL can outsource the inspections and maintenance of its vehicles, it cannot outsource its responsibility for ensuring the safety of its equipment. Even so, there is sufficient evidence to demonstrate factual issues best left to a jury in determining whether the inspections were conducted in a substandard manner sufficient to constitute a breach of MGL's duty of care.

Second, Plaintiff contends MGL is vicariously liable for the negligent inspection of its driver, Tellis Hatton. Citing MGL's Rule 30(b)(6) witness testimony, Plaintiff avers that under 49 C.F.R §§ 396.13 and 396.11, Hatton was required to perform a pre-trip inspection with each load he hauled to ensure the landing gear had no damaged, missing, or defective parts. (ECF No. 66 at 5). Hatton's failure to identify that the trailer's landing gear was missing the "essential" diagonal lateral bracing was, in Plaintiff's estimation, a breach of his duty. (*Id.*). MGL responds that the landing gear did have cross-bracing installed, just not *diagonal* cross-bracing, and that Plaintiff fails to identify any code, regulation, or other legal authority that requires diagonal cross-bracing. (ECF No. 76 at 2). Plaintiff points to

the SAE Holland Manual applicable to the trailer's landing gear, which states that the bracing specifications listed in the manufacturer's manual are the minimum bracing requirements to meet the American Association of Railroads ("AAR") AAR-931 Side Load Requirements.[4] (ECF No. 66-7 at 8). MGL also responds with testimony from Plaintiff's expert witnesses undermining Plaintiff's assertion that Hatton was required to have knowledge of and inspect the cross-bracing. (ECF No. 76 at 9–10).

The parties' conflicting evidence regarding whether Hatton's inspection breached a duty of care demonstrate genuine issues of material fact best left to the jury to resolve. Although the court is tasked with determining a party's legal duty, the jury, as the factfinder, is tasked with determining whether that duty has been breached. The court may only take this responsibility from the purview of the jury where the evidence demonstrates only one reasonable inference. The evidence presented does not support such a finding, as a jury could reasonably find Hatton conducted a proper pre-trip inspection. Accordingly, Plaintiff is not entitled to summary judgment on this issue.

  b. *K2 Express*

Plaintiff asserts no issue of material fact exists concerning K2's liability based on its failure to identify and respond to the trailer's defective landing gear during the August and December 2020 inspections. (ECF No. 66 at 12). Plaintiff maintains that K2, through its employee, had a duty to inspect the landing gear and either repair it or, at a minimum,

---

[4] AAR requirements were adopted as the industry standard for the Truck Trailer Manufacturers Association to ensure trailers are strong enough to handle common-use requirements and meet common load capacity needs in the transportation industry. (ECF No. 81-2 at 4, Smidler Dep. 13:12–22).

notify MGL of any issues. (ECF No. 82 at 9). K2 breached this duty, according to Plaintiff, by failing to identify that the SAE Holland Atlass-55 replacement landing gear was missing the requisite lateral diagonal cross-bracing that was present on the trailer's landing gear during previous inspections. (ECF No. 82 at 11).

K2 counters that it did not have a duty under the FMCSRs to place the trailer out of service due to lack of diagonal bracing, and therefore it did not breach its duty of care. (ECF No. 73 at 6). K2 offers testimony from Stoughton Trailer's former head of lab testing and director of manufacturing and quality assurance, Frank Smidler, and K2's expert, Scott Turner, to support its position. (*Id.* at 7 (citing ECF No. 68-4, Smidler Dep. 46:21–47:8; ECF No. 73-1 at 2, Turner Dep. 314:18–22)). Because there were no missing parts and the landing gear installed by Innovative Repair was in good working condition, the trailer did not pose a hazard an FMCSA inspection is meant to uncover. (*Id.* at 9).

Plaintiff responds that K2's argument fails to address its voluntary agreement to inspect the landing gear and recommend repairs for any deficiencies which rendered the trailer unsafe for loading. (ECF No. 82 at 8). Plaintiff cites to testimony from Kryzstof Krol, the K2 technician responsible for inspecting the trailer from 2017 through December 2020 that he inspected the landing gear for missing or damaged parts as part of his inspection. (*Id.* at 8 (citing ECF No. 66-16 at 12, Krol Dep. 54:3–18)). Krol goes on to testify if he had seen damaged or missing components on the landing gear during his inspection, he would repair the trailer or put it out of service. (ECF No. 66-16 at 13, Krol Dep. 58:3–17). Plaintiff also presents testimony from MGL's Rule 30(b)(6) witness concerning MGL's understanding that K2 would identify and fix or pull unsafe equipment.

(ECF No. 82 at 9–10). This testimony is bolstered by the inclusion of landing gear on MGL's inspection sheet. (*See* ECF No. 66-15).

The court finds that K2 had a duty to conduct a reasonable inspection of the trailer and that the purpose of the inspection was to ensure the trailer was safe. However, there is conflicting testimony as to whether the absence of a diagonal cross-brace constituted a defect rendering the trailer unsafe for use, and whether loading gear is even subject to the FMCSRs. Ultimately, K2 has introduced sufficient evidence to demonstrate a disputed issue of material fact as to whether it breached its duty of care to Plaintiff, rendering summary judgment in Plaintiff's favor improper.

### c. TQ Logistics

Plaintiff argues that there is no genuine dispute that TQL was responsible for inspecting incoming trailers to ensure they were capable of being safely loaded, and that its inspection in this case was negligent. (ECF No. 66 at 14). TQL responds that summary judgment is improper because the parties disagree on the meaning of the term "inspection" under the relevant agreement. (ECF No. 78 at 4).

Prior to the accident, TQL entered into an agreement with New Indy (the "Shunting Agreement") to provide shunting services to move trailers back and forth between the trailer lot and the loading dock at New Indy. According to TQL, the term "inspection" is not defined in the agreement or in any applicable rules or regulations. (ECF No. 78 at 4.). Plaintiff contends the term should be given its ordinary meaning, "to examine something closely, especially to judge its quality or condition." (ECF No. 80 at 2). TQL argues that the inspection performed under the Shunting Agreement was not meant to find improperly

repaired or designed landing gear, but to check for actual damage to the landing gear or missing bolts. (ECF No. 78 at 5). Viewing the evidence presented in the light most favorable to TQL, as the nonmoving party, a reasonable jury could conclude TQL was not negligent in performing its inspection under the Shunting Agreement. Accordingly, determination of whether TQL breached its duty should be left to the jury.

    2.  <u>Proximate Cause</u>

Plaintiff insists there is no dispute that the missing diagonal cross-brace was the cause of the accident. K2 avers that causation in fact remains in dispute as Plaintiff has not shown that but for the lack of diagonal bracing, Plaintiff's accident would not have occurred. (ECF No. 73 at 2). According to K2, none of the witnesses attempted to reconstruct the accident or test the assumption that diagonal bracing of the landing gear would have prevented its occurrence. (*Id.*). And, K2 asserts there is no evidence as to whether the landing gear started to bend before or after the 18,000-pound load's center of gravity moved past the point where the landing gear's leg touched the ground. (*Id.*). K2 opines this critical fact would have established "whether the sideways fold of the landing gear was merely the aftereffect of the trailer's tilt past the point of no recovery or whether it was the cause of the deeper tilt that necessarily led to the trailer's fall on its side." (*Id.*). K2 does not cite to any actual evidence in support of its theory of but-for causation, instead focusing on challenges to Plaintiff's evidence. Plaintiff, on the other hand, presents substantial evidence to support lack of diagonal bracing as the but-for cause of the accident. (ECF No. 82 at 1–8).

The court is doubtful that a genuine dispute exists as to causation in fact. However, as Plaintiff acknowledges in his Response to K2's Motion for Summary Judgment, Plaintiff did not request summary judgment in his favor on this issue. (ECF No. 75 at 11 (asking the court to find in his favor on this issue *sua sponte*)). The court does possess authority under Federal Rule of Civil Procedure 56(f) to grant summary judgment *sua sponte* after giving parties "notice and a reasonable time to respond." To make such a ruling, the court "must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *Karp v. First Connecticut Bancorp, Inc.*, 69 F.4th 223, 230 (4th Cir. 2023) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)). Here, this issue has now been fully briefed by Plaintiff and K2. However, because Plaintiff failed to ask for summary judgment on this precise issue, Defendants TQL and MGL have not had the opportunity present any pertinent response. Accordingly, summary judgment is not appropriate on the issue of causation in fact.

TQL contends proximate cause remains disputed, arguing the expert witnesses hired in this matter disagree about the legal cause of the accident. (ECF No. 78 at 4). TQL's expert opines that the cause of the accident was the improper repair of the trailer when the condition of the landing gear was not returned to the same standard as before the repairs were made. (ECF No. 66-20). However, Plaintiff's expert opines that the landing gear was missing parts TQL employees should have found in the inspection. (ECF No. 66-9).

Proximate cause generally is an issue of fact for the jury, to be decided as a matter of law only in "rare or exceptional cases" where "the evidence is susceptible to only one

inference." *Muhler Co. v. Ply Gem Holdings, Inc.*, 637 F. App'x 746, 748 (4th Cir. 2016) (citing *Cody P. v. Bank of Am., N.A.*, 395 S.C. 611, 621–22, 720 S.E.2d 473, 478–79 (Ct. App. 2011)). This is not such a case. Defendants have put forth sufficient evidence to demonstrate genuine issues of fact on causation such that there is more than one reasonable inference that could be drawn from the evidence. Accordingly, the court denies summary judgment on proximate causation.

3.  Damages

Turning to damages, Plaintiff asserts that there is no genuine dispute that the accident cause damage to his lower back, entitling him to summary judgment. (ECF No. 66 at 17). MGL and TQL respond that summary judgment is inappropriate because there is significant evidence that Plaintiff had a prior history of lower back pain. (ECF Nos. 76 at 10–11; 78 at 9). To support their argument, MGL and TQL both cite to medical records showing Plaintiff's history of lower back pain. (ECF Nos. 76 at 11; 78 at 9). According to these records, Plaintiff received treatment for his back from several providers before the incident at issue. (ECF Nos. 76-11, 76-12, 76-13, 76-14, 76-15, 76-17, 76-18, & 76-19). Defendants also present testimony from Plaintiff's expert witnesses that Plaintiff's lower back issues were "symptomatic" prior to the accident, (ECF No. 76-21 at 2), and that Plaintiff had been diagnosed with facet arthropathy in 2014, a degenerative condition and common source of back pain, (ECF No. 76-22 at 3–4).

The court finds Defendants have successfully shown the existence of genuine issues of material fact regarding the causation and amount of Plaintiff's damages. As such, the court denies summary judgment on this issue.

14

4.   Comparative Negligence

Finally, Plaintiff asserts that there is no evidence in the record that he did anything wrong to warrant holding him comparatively negligent in causing the accident. (ECF No. 66 at 18). South Carolina applies the doctrine of comparative negligence, such that "a plaintiff may only recover damages if his own negligence is not greater than that of the defendant." *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000) (citing *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 245, 399 S.E.2d 783 (1991)). "Ordinarily, comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide." *Id.* (citations omitted). A trial court may, however, issue judgment as a matter of law if only one reasonable inference may be drawn from the evidence. *See id.* Because this threshold is seldom surpassed, "summary judgment is generally not appropriate in a comparative negligence case." *Id.*

According to Plaintiff, there is "zero evidence" to indicate there was any visible floor damage on the inside of the trailer that would put Plaintiff on notice that the trailer floor was compromised. (ECF No. 66 at 18). As such, Plaintiff asks the court to grant summary judgment in his favor finding he was not comparatively negligent as a matter of law. (*Id.*). TQL—the only defendant to respond to this issue—counters that an issue of fact exists as to Plaintiff's negligence because Plaintiff also had a duty to inspect the interior of the trailer as the "last line of defense" under Occupational Safety and Health Administration ("OSHA") requirements. (ECF No. 78 at 12).

In his Reply, Plaintiff counters that "Plaintiff neither did inspect nor was required to inspect the flooring underneath the trailer. Plaintiff was only required to inspect the flooring

inside the trailer, which he did." (ECF No. 80 at 8). Plaintiff does not provide any additional argument regarding the scope of his duty. TQL, on the other hand, refers to testimony from K2's expert, Scott Turner, espousing that Plaintiff has a duty under OSHA as a powered industrial truck operator to inspect the trailer prior to loading it. (ECF No. 78-5 at 3). OSHA regulations provide that "[t]he flooring of trucks, trailers, and railroad cars shall be checked for breaks and weaknesses before they are driven onto." 29 C.F.R. § 1910.178(m)(7). As such, Turner opined Plaintiff should have walked into the trailer and inspected the interior for dirt, debris, cracks, holes, or any visible issues with the floor of the trailer. (ECF No. 78-5 at 2–3).

Notably, Turner also testified that Plaintiff "certainly had no duty to look at the landing gear and see if there was some type of components missing[.]" (ECF No. 80-5 at 8, Turner Dep. 301:20–24). Plaintiff testified that he went inside the trailer to inspect and it "looked okay." (ECF No. 66-33 at 2–3). Belton also testified that he inspected the trailer inside and out and did not identify any damage to the flooring. (ECF No. 66-19 at 14). In contrast, Turner testified there was a high probability the trailer floor had preexisting damage based on the trailer's age, and if Plaintiff had rejected the trailer because of the preexisting floor damage the accident would likely not have occurred. (ECF No. 78-5 at 4–6, Turner Dep. 84:10–85:22).

In reply, Plaintiff challenges Turner's testimony. Plaintiff contends Turner was incorrectly "confident" the trailer was "well over ten years old at the time of the accident[,]"

even though the trailer was in fact four years old at the time. (ECF No. 80 at 8).[5] Turner went on to elaborate, however, that whether a trailer is "aged" depends more on the service life and use of the trailer than the date of manufacturing. (ECF No. 80-5 at 15–16, Turner Dep. 308:11–309:15). Critically, Plaintiff also notes that Turner never personally inspected the trailer, and his opinions are based entirely on photographs taken by K2's attorney approximately two years after the accident occurred. (ECF No. 80 at 8).

At bottom, based on testimony from K2's expert, Plaintiff's duty was to examine the flooring of the trailer to check for breaks and weaknesses. The only evidence before the court is that Plaintiff conducted such an inspection. Defendants have not presented any evidence to rebut testimony from witnesses that there was no visible floor damage in the trailer. Because Defendants have not introduced any evidence to support the claim that Plaintiff did not inspect the trailer or that his inspection was negligent, a jury could not reasonably find any basis for holding Plaintiff comparatively negligent. Accordingly, Plaintiff is entitled to summary judgment on this issue.

## B.  Defendant TQ Logistics' Motion for Partial Summary Judgment

### 1.  Breach of Duty

First, TQL opines that it is entitled to summary judgment on Plaintiff's direct negligence claims because there is no evidence establishing that TQL was negligent in

---

[5] A review of Turner's testimony reveals that Plaintiff overstates the testimony. After stating he did not recall the age of the trailer and being pressed to estimate, Turner appeared less than confident of the age of the trailer. (ECF No. 80-5 at 14, Turner Dep. 307:16–19 ("Q. Do you believe it is older than ten years? A. I would say yes. Q. Do you believe it is older than 15 years? A. I don't know. I don't know. I'm not going to guess.")).

employing Calvin Belton. (ECF No. 67-1 at 4). Specifically, TQL maintains there is no evidence that it was negligent in hiring Belton as a switcher or that it negligently retained Belton because there was nothing in his employment record prior to the day of the accident to warrant his termination. (*Id.*). Plaintiff responds that TQL had direct knowledge that Belton had vision issues stemming from glaucoma during his employment. (ECF No. 74 at 7). Plaintiff presents Belton's deposition testimony that his supervisor and TQL leadership were aware of his eye condition, and that his vision loss was the reason for his ultimate termination from TQL in 2023. (*Id.* (citing ECF No. 74-3 at 30–33, Belton Dep. 107:17–110:5)). Accordingly, Plaintiff contends a jury could reasonably conclude TQL was negligent in hiring and retaining Belton when a major part of his job was performing visual inspections of trailers. (ECF No. 74 at 7).

A claim for negligent hiring requires Plaintiff to show TQL knew its employment of Belton created an undue risk of harm to the public when he was hired. *James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008). TQL has introduced evidence to show Belton was medically qualified for the position when he was hired. (*See* ECF No. 83-5 at 2 (Medical Examiner's Certificate certifying Belton was qualified under the FMCSRs)). And Plaintiff has not presented any evidence to rebut TQL's evidence or to support the claim that TQL was aware that Belton has vision issues severe enough to impair his performance and constitute foreseeable risk at the time of hiring. Consequently, Plaintiff fails to introduce evidence sufficient to prevent summary judgment on this claim.

Plaintiff's negligent retention claim suffers the same fate. Plaintiff claims a reasonable jury could conclude Belton's impaired vision led him to conduct a negligent

inspection of the trailer. However, to support a claim for negligent retention against TQL, Plaintiff "must demonstrate some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties." *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 860 (D.S.C. 2015). Stated differently, Plaintiff must demonstrate TQL had knowledge of Belton's habit of prior wrongdoings, and despite the foreseeability of harm to third parties, TQL failed to terminate him before he caused Plaintiff harm. *Id.* (citing *Doe v. ATC, Inc.*, 367 S.C. 199, 205–06, 624 S.E.2d 447, 450–51 (Ct. App. 2005)). Plaintiff has not put forth any evidence to show TQL was on notice that Belton had visual impairment severe enough to impact his performance at the time of the accident. Plaintiff offers Belton's deposition testimony to support his claim that Belton's vision impaired his performance and TQL was on notice of his vision problems. However, in his deposition, Belton testified that his vision was not substantially impaired until after he had surgery in September 2023—two years after Plaintiff's accident. (ECF No. 74-3 at 31–32). TQL's knowledge of Belton's glaucoma does not equate to "propensity, proclivity, or course of conduct" sufficient to put TQL on notice of any possible danger to third parties.

In sum, Plaintiff fails to present evidence to show TQL was aware of any risk related to Belton's vision at the time of hiring or during his employment prior to Plaintiff's accident. Accordingly, the court grants summary judgment in favor of TQL and dismisses Plaintiff's negligent hiring and retention claim against TQL.

Next, TQL claims that there is no evidence it failed to adequately train or supervise Belton. Plaintiff insists there is sufficient evidence in the record to allow a reasonable juror to find TQL negligent in failing to develop and implement trailer inspection procedures

and train switchers on appropriate identification of landing gear parts. (ECF No. 74 at 7). The court agrees. Plaintiff explains that in 2019, as part of TQL's responsibilities outlined in the Shunting Agreement with New Indy, TQL was to develop, maintain, and implement safe practices and standard operating procedures for yard operation. (ECF No. 74 at 4). As part of the Shunting Agreement, TQL was to provide training to new switchers, but TQL was unable to produce documentation confirming that Belton received such training. (*Id.* at 5). Additionally, TQL's Rule 30(b)(6) witness testified that, at the time of the accident, TQL did not train him or Belton to look for specific parts on equipment, only to look for damage. (ECF No. 74-4 at 57–58). The court finds this evidence sufficient for a jury to reasonably find that TQL breached its duty to properly train its employees. Accordingly, this claim survives summary judgment.

TQL also contends there is no evidence to support Plaintiff's claim that TQL failed to ensure the trailer was properly maintained or that it even owed such a duty. (ECF No. 67-1 at 6). Plaintiff did not directly respond to this argument. The court agrees with TQL that Plaintiff has not presented any legal basis or other evidence to create a duty to maintain and repair the trailer beyond its duty to inspect and notify of issues. As discussed above, however, Plaintiff has presented evidence that TQL owed a duty of care based on its contractual relationship with New Indy to conduct inspections in a reasonable manner. Accordingly, resolution of whether TQL's conduct was outside of its duty of care is best left to the jury and the court denies summary judgement on this issue.

20

2.    <u>Punitive damages</u>

TQL next argues that summary judgment is appropriate on Plaintiff's punitive damages claim because there is no evidence of willful, wanton, or reckless conduct. (ECF No. 67-1 at 8). Punitive damages are available in South Carolina when a defendant's "conduct was so reckless, willful, wanton, or malicious that the defendant should be punished and deterred by requiring him or her to pay money to the plaintiff." *Clark v. Cantrell*, 339 S.C. 369, 381, 529 S.E.2d 528, 534 (2000). "A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights." *Taylor v. Medenica*, 324 S.C. 200, 221. 479 S.E.2d 35, 46 (1996) (citation omitted). "In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." S.C. Code Ann. § 15-33-135.

Plaintiff avers that a reasonable juror could conclude Belton's conduct was willful, wanton, or reckless based on his negligent inspection or lack of inspection. (ECF No. 74 at 9). Plaintiff refers to Smidler's deposition, stating that every van trailer in the United States has some form of diagonal cross-bracing and such bracing is so customary he would expect anyone reasonably familiar with commercial trailers to recognize the missing gear. (*Id.* at 8–9 (citing ECF No. 74-9 at 8, Smidler Dep. 45:10–15)). From here, Plaintiff makes the leap—and asks the court to jump with him—that a reasonable juror could conclude that Belton failed to inspect the trailer entirely or was so visually impaired he could not properly inspect the trailer. (*Id.* at 9). In Plaintiff's view, either of these determinations would

21

involve actions that were either willful or knowing and thus support the submission of punitive damages to the jury. (*Id.*). However, even resolving inferences in Plaintiff's favor, the court is not persuaded that Plaintiff has provided clear and convincing evidence such that a reasonable jury could come to either of these conclusions.

Plaintiff's second argument against summary judgment on this issue is stronger. According to Plaintiff, punitive damages are suitable based on TQL's failure to develop adequate operating procedures and training materials for its switchers, combined with its inclusion of misleading materials. (ECF No. 74 at 9). Specifically, Plaintiff contends the procedures and material TQL did develop and provide to the switchers contained diagrams of landing gear that lack diagonal cross-bracing, implicitly suggesting such landing gear is acceptable and safe. (*Id.*). TQL retorts that Plaintiff once again fails to introduce any expert testimony of regulations applicable to switcher drivers, who are not subject to the FMCSA or its regulations, regarding identification of suitable cross bracing on landing gear. (ECF No. 83 at 10).

Based on the evidence presented, the court cannot say as a matter of law that punitive damages are not appropriate. "The issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton." *Mishoe v. QHG of Lake City, Inc.*, 366 S.C. 195, 201, 621 S.E.2d 363, 366 (Ct. App. 2005) (citation omitted). The

evidence presents a sufficient disagreement to require submission to a jury. As such, the court denies summary judgment as to punitive damages.[6]

## C.    Defendant K2 Express's Motion for Summary Judgment

### 1.   Duty and Breach

K2 Express first argues particularities of the landing gear's design, including diagonal bracing, lay beyond the scope of K2's duty of care in performing the FMCSA-mandated annual inspections of the Stoughton trailer. (ECF No. 68 at 7). K2 does not contest that its duty is informed by the FMCSRs. Instead, K2 insists that, contrary to Plaintiff's allegations, these regulations do not set standards for inspection or installation of landing gear because these regulations pertain to safety of transportation on public roads. (*Id.* at 8). Landing gear is relevant to loading, TQL opines, not public safety on common roadways. As such, K2 performed the annual inspection competently by ensuring MGL's trailer did not pose a risk to the motoring public. (*Id.* at 10).

In rebuttal, Plaintiff presents testimony from his expert, Jay Zembower, that once landing gear is "configured to the motor vehicle it becomes part and parcel of the frame and cross members of the trailer, so it falls underneath the guidelines of the duty to inspect for any missing, loose, corroded[ ] bolts or anything in the undercarriage of the vehicle[.]" (ECF No. 75-4 at 2, Zembower Dep. 94:13–25). Plaintiff also explains K2 entered an agreement with MGL to perform its federally mandated inspections under 42 C.F.R. §§

---

[6] TQL requests bifurcation pursuant to Federal Rule of Civil Procedure 42(b) if the court denies summary judgment on punitive damages. (ECF No. 67-1 at 11). This request is not appropriate for consideration of a motion for summary judgment and should be made in a motion in limine. As such, the request is denied without prejudice.

396.3 and 396.17. (ECF No. 75 at 3). During these inspections, K2 agreed to inspect the entire trailer, including the landing gear, which was specifically listed in MGL's inspection sheets. (*Id.*)

As stated above, the existence of a duty is a question of law for the court, *Houck*, 366 S.C. at 11–12, 620 S.E.2d at 329, but deciding whether a duty was breached is a question of fact for the jury, *Dorrell*, 361 S.C. at 325, 605 S.E.2d at 18. K2 owed a duty to Plaintiff to conduct a reasonable inspection of the trailer to determine whether it was safe for use. Whether the lack of diagonal bracing made the trailer unsafe is for the jury to decide. Consideration of the FMCSRs may shape the jury's analysis of whether K2 breached its duty. However, the evidence presented is not so one-sided that the court can make the determination as a matter of law. Thus, the court denies summary judgment on this issue.

    2.   <u>Causation in Fact</u>

Next, K2 argues that Plaintiff's experts' opinions amount to mere speculation and therefore Plaintiff has no proof that lack of diagonal bracing was the but-for cause of his accident. (ECF No. 68 at 11). In response, Plaintiff counters that but-for causation has not genuinely been disputed during this litigation, and there is no credible evidence of any other cause for the landing gear failure and the resulting trailer tip-over. (ECF No. 75 at 1). After citing to copious testimony in support of his position, Plaintiff asks the court to consider entering summary judgment in his favor *sua sponte* pursuant to Federal Rule of Civil Procedure 56(f) on this issue. (ECF No. 75 at 1).

In support of his position, Plaintiff notes that Stoughton Trailer's former head of lab testing and director of manufacturing and quality assurance, Frank Smidler, testified that the lack of diagonal or "A" bracing was the cause of the accident. (ECF No. 75 at 9–10 (citing ECF No. 68-4 at 16–19)). Plaintiff's expert Jay Zembower performed a site inspection of the trailer and issued a report opining "to a high degree of mechanical certainty, the MGL trailer tipped over due to landing gear failure and collapse which was a direct result of not having the essential lateral diagonal bracing." (ECF No. 66-9 at 5).

K2, on the other hand, retorts that Smidler did not actually examine the trailer and did not conduct any relevant tests. (ECF No. 84 at 3 (citing ECF No. 68-4 at 8–12)). K2 also avers Zembower is not an engineer or an accident reconstructionist. (ECF No. 68 at 12 (citing 68-7 at 30, Zembower Dep. 114:23–115:5)). Furthermore, K2 emphasizes Zembower testified that performing calculations concerning pressure and lateral forces the grab truck and the paper roll exerted on the landing gear was beyond the scope of his engagement. (ECF No. 68-7 at 30, Zembower Dep. 115:6–116:13.)

Plaintiff notes New Indy also performed a post-accident investigation and concluded that the root cause of the trailer tip-over was the landing gear's lack of diagonal cross-bracing. (ECF No. 68-5 at 14, Stuart Dep. 51:5–10). Furthermore, both TQL's Rule 30(b)(6) witness, Robert Wilkins, and TQL's retained expert, Sam Faucette, appear to concede the trailer tipped over due to its lack of diagonal bracing. (ECF No. 68-6 at 19, Wilkins Dep. 63:22–64:7 (stating the lack of proper bracing caused the collapse); ECF No. 66-20 at 7, Faucette Report (finding the lack of proper replacement parts "allowed the landing gear to not support the weight of the powered industrial truck with the roll of paper

in a concentrated area of the trailer")).[7] Moreover, K2's own expert, Scott Turner, opined in his report that had the trailer's landing gear been installed in accordance with Holland's installation instructions, there is a high degree of probability the incident would not have occurred. (ECF No. 66-10 at 8).

Viewed in the light most favorable to Plaintiff, the evidence set forth by the parties demonstrates a material issue of fact for the jury on the issue of causation. Accordingly, denies summary judgment to K2 on this issue. Additionally, for the reasons discussed above, the court also declines Plaintiff's invitation to rule in his favor *sua sponte*.

## IV.    CONCLUSION

Based on the foregoing, the court finds as follows:

- Plaintiff's Motion for Summary Judgment (ECF No. 66) is granted on the issue of comparative negligence and denied as to the remaining arguments.

- Defendant TQL's Motion for Summary Judgment (ECF No. 67) is granted as to Plaintiff's negligent hiring and retention claim and denied as to the remaining issues.

- Defendant K2's Motion for Summary Judgment (ECF No. 68) is denied.

IT IS SO ORDERED.

March 20, 2025                                      Joseph F. Anderson, Jr.
Columbia, South Carolina                     United States District Judge

---

[7] Although this testimony appears to concede but-for causation, there is no concession as to legal causation. (*See* ECF No. 68-6 at 19, Wilkins Dep. 65:11–66:15 (attributing liability to Innovative Repair, MGL, and K2); ECF No. 66-20 at 7, Faucette Report (stating the root cause of the incident was Innovative Repair's improper repair of the trailer)).