**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Anthony Avery,<br><br>Plaintiff,<br>v.<br><br>MG Logistics, Inc.,<br><br>Defendant. | C/A No. 0:23-cv-222-JFA<br><br>**OPINION AND ORDER** |

This matter is before the Court on MG Logistics, Inc.'s, ("Defendant") Motion for Judgment as a Matter of Law or, in the alternative for a New Trial Absolute, or New Trial *Nisi Remittitur.* (ECF No. 192). Defendant moves this Court for judgment as a matter of law under Fed. R. Civ. P. 50(b), or failing that, for a new trial absolute or, failing that a new trial *nisi remittitur* under Fed. R. Civ. P. 59(a) pertaining to the jury's verdict. *Id.* Plaintiff filed a response to this motion, (ECF No. 199), to which Defendant filed a Reply, (ECF No. 205). Thus, this matter is ripe for review.[1] For the reasons stated herein, Defendant's Motion for Judgment as a Matter of Law and all other alternative relief is denied.

## I. FACTS AND PROCEDURAL HISTORY

This action arises from an incident that occurred on March 27, 2021, at New Indy Container Board ("New Indy") in Catawba, South Carolina. Plaintiff, performing his duties as a shipping clerk for New Indy, was injured when a trailer he was loading with a roll of

[1] Defendant requests a hearing relating to this motion. Inasmuch as the parties' briefs adequately informed the Court of their positions, the Court exercises its discretion to adjudicate the motions without a hearing. *See* Local Civ. Rule 7.08 (D.S.C) ("Hearings on motions may be ordered by the court in its discretion. Unless so ordered, motions may be determined without a hearing.").

paper fell over while he was inside. Plaintiff originally brought this action against Stoughton Trailers, LLC, ("Stoughton") K2 Express, Inc., ("K2") TQL, Logistics, Inc., ("TQL") and MG Logistics, Inc., ("MGL" or "Defendant") asserting claims of negligence, gross negligence, negligence per se, negligent hiring, and negligent training/supervision. Plaintiff stipulated to the dismissal of Stoughton, K2, and TQL, leaving MGL as the only remaining Defendant for trial.

In 2017, MGL leased the trailer at issue from Stoughton. On July 11, 2020, the trailer was damaged in an unrelated incident and taken by MGL to Innovative Truck Service, LLC ("Innovative") for service. Innovative replaced the landing gear on the trailer but did not install any lateral diagonal cross bracing as recommended by the landing gear's installation manual. After this repair and prior to Plaintiff's injuries, MGL took the trailer to K2 on three occasions for maintenance, repairs, and an annual inspection. There was no mention of lack of cross bracing.

As Plaintiff entered the trailer on the grab truck on the day of the incident, the trailer's landing gear collapsed, and the trailer fell over on its side with Plaintiff inside. Plaintiff alleged that he suffered serious injury to his lower back, resulting in a two-level spinal fusion and permanent nerve damage. The parties disputed whether diagonal cross bracing was required and whether the absence of such bracing was the root cause of the accident. The parties also disputed the extent and severity of Plaintiff's injuries. This matter was the subject of a week-long jury trial beginning on May 4, 2026.

The jury heard extensive testimony from fact witnesses, treating physicians, medical experts, industry experts, and Defendant's corporate representative. After the conclusion of Phase I of the trial, the jury awarded compensatory damages in the amount of $7,480,000. The jury also found that MGL's conduct was willful, wanton, or reckless, thus permitting an award of punitive damages. The jury awarded $2,800,000 in punitive damages at the conclusion of Phase II. Defendant now files this present motion seeking judgment as a matter of law, or in the alternative a new trial, and failing that a new trial *nisi remittitur.* (ECF No. 192).

## II. LEGAL STANDARD

### A. Judgment as a Matter of Law

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may … grant a motion for judgment as a matter of law." Fed. R. Civ. P. 50(a). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal issues raised by the motion." Rule 50(b). "No later than 28 days after the entry of judgment … the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *Id.* "In ruling on the renewed motion, the Court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"When the verdict is returned … the verdict is permitted to stand unless, under Rule 50(b), no substantial evidence is presented to support the" jury's decision. *Mattison v. Dallas Carrier Corp*., 947 F.2d 95, 100 (4th Cir. 1991) (citation modified). "In making this determination, [courts] are not permitted to retry factual findings or credibility determinations reached by the jury." *Cline v. Wal-Mart Stores, Inc*., 144 F.3d 294, 301 (4th Cir. 1998). "Rather, [courts] are to assume that testimony in favor of the non-moving party is credible, 'unless totally incredible on its face,' and ignore the substantive weight of any evidence supporting the moving party." *Id.* (quoting *Duke v. Uniroyal, Inc*., 928 F.2d 1413, 1419 (4th Cir. 1991)). "The standard of review for the Court's consideration of a Rule 50(b) motion is generally the standard of review for a Rule 56 summary judgment motion." *Gifford v. Horry Cnty. Police Dep't*, No. 4:16-CV-03136-MGL, 2023 WL 2702953, at *1 (D.S.C. Mar. 29, 2023), *aff'd*, No. 23-1471, 2024 WL 5166611 (4th Cir. Dec. 19, 2024) (citing *Brown v. CSX Transp., Inc*., 18 F.3d 245, 248 (4th Cir. 1994)). A "court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Ketema v. Midwest Stamping, Inc*., No. CV 3:02-0502-JFA, 2007 WL 9747241, at *3 (D.S.C. Mar. 6, 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133 (2000)).

**B. Motion for a New Trial**

After a jury trial, a Court may, "on motion, grant a new trial … for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R.

Civ. P. 59(a)(1)(A). A court must "set aside the verdict and grant a new trial, if it is of the opinion that (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (internal quotation marks and citations omitted). When evaluating a Rule 59(a) motion, "a trial judge may weigh the evidence and consider the credibility of the witnesses." *Hicks v. Ferreyra,* 64 F.4th 156, 175 (4th Cir. 2023) (citation modified).

**C. Motion for New Trial *Nisi Remittitur***

"[R]emittitur, used in connection with [Rule] 59(a), is the established method by which a trial judge can review a jury award for excessiveness." *Atlas Food Sys.*, 99 F.3d at 593. If "a court finds that a jury award is excessive, it is the court's duty to require a remittitur or order a new trial." *Id.* "Absent any constitutional challenge to the amount of a jury's punitive award … a federal district court reviews such an award by applying the state's substantive law of punitive damages under standards imposed by federal procedural law." *Id.*

Under South Carolina law, when "a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Riley v. Ford Motor Co.*, 414 S.C. 185, 192, 777 S.E.2d 824, 828 (2015) (quoting *Allstate Ins. Co. v. Durham*, 314 S.C. 529, 530–31, 431 S.E.2d

557, 558 (1993)). "When the verdict indicates the jury was unduly liberal in determining damages, the trial court alone has the power to reduce the verdict by the granting of a new trial *nisi remittitur*." *Welch v. Epstein*, 342 S.C. 279, 303, 536 S.E.2d 408, 420 (Ct. App. 2000). "A motion for new trial *nisi remittitur* asks the trial court in its discretion to reduce the verdict because it is merely excessive, although not motivated by considerations such as passion, caprice or prejudice" *Id.* (citing *O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993)).

## III. ANALYSIS

Defendant argues that it is entitled to Judgment as a Matter of law, or in the alternative a new trial absolute, or failing that, a new trial *nisi remittitur*. (ECF No. 192). For the reasons stated herein, all requests for relief are denied.

### A. Judgment as a Matter of Law

As an initial matter, Defendant, at trial, made a motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a) that was denied. Accordingly, Defendant's Rule 50(b) motion, filed within 28 days after the entry of judgment, is properly before the court. Defendant argues it is entitled to judgment as a matter of law because: (1) Plaintiff presented insufficient evidence that MGL was negligent; and (2) Plaintiff failed to prove MGL acted recklessly toward him for purposes of punitive damages. Both arguments are addressed herein.

**(1) Defendant argues that Plaintiff presented insufficient evidence that MGL was negligent.**

MGL argues that Plaintiff failed to present evidence that it was negligent but rather the evidence supports that MGL complied with Federal Motor Carrier Safety Regulation ("FMCSR") 396.3(a) by having a system in place for inspection, repair, and maintenance of motor vehicles subject to its control; that MGL complied with FMCSR 396.11(a) because the specific enumerated items of the section do not list landing gear or cross bracing; and that MGL did not breach its common law duty to act as a reasonably prudent motor carrier because it had no actual or constructive notice of any defect or dangerous condition.[2] (ECF No. 192, pp. 7–13).

First, MGL's arguments require this Court to revisit its ruling at summary judgment.[3] At summary judgment MGL, providing no case law or other supporting authority, argued that it complied with the requirements of the FMCSRs. MGL relied on 49 C.F.R § 396.17(e) which allows that "a motor carrier … responsible for the inspection [required by paragraph (d)] may choose to have a commercial garage, fleet leasing

[2] Defendant also argues that "[t]o the extent Plaintiff claims the jury's general negligence verdict was based on a finding that MGL was negligent in its hiring, training/supervision, or retention of [its driver], this is likewise unsupported by the evidence." (ECF No. 192, p. 12). Defendant further correctly notes that while this was a cause of action listed in the complaint, "Plaintiff never requested this issue be submitted to the jury as a distinct theory of liability." *Id.* No party requested that this Court charge the jury regarding negligent hiring, training/supervision. Accordingly, it did not do so. Thus, arguments for or against the merits of this non-charged claim's impact on the jury verdict, raised for the first time in this motion, are fruitless. More importantly however, this is beyond the scope of what Defendant raised in its Rule 50(a) motion made at trial and accordingly is not appropriately asserted in its Rule 50(b) motion here.

[3] Defendant also makes this argument in regard to its request for a new trial. (ECF No. 192, pp. 17–23). This analysis addresses that portion of Defendant's argument as well.

company, truck stop, or other similar commercial business perform the inspection as its agent[.]" In its prior order, this Court ruled:

> The FMCSRs expressly provide "[i]n lieu of the self-inspection provided for in paragraph (d) of this section, a motor carrier or intermodal equipment provider responsible for the inspection may choose to have a commercial garage, fleet leasing company, truck stop, or other similar commercial business perform the inspection as its agent[.]" 49 C.F.R. § 396.17(e). The court therefore agrees with MGL's contention that it is not required to directly perform the inspections, as allowed by the FMCSRs. However, 49 C.F.R. § 396.17(g) explicitly states "[i]t is the responsibility of the motor carrier or intermodal equipment provider to ensure that all parts and accessories on commercial motor vehicles intended for use in interstate commerce for which they are responsible are maintained at, or promptly repaired to, the minimum standards set forth in appendix A to this part." The issue here is not whether the inspections were conducted, but whether they were conducted in a negligent manner, allowing the trailer to stay in use despite it being unsafe for use. Although MGL can outsource the inspections and maintenance of its vehicles, it cannot outsource its responsibility for ensuring the safety of its equipment. Even so, there is sufficient evidence to demonstrate factual issues best left to a jury in determining whether the inspections were conducted in a substandard manner sufficient to constitute a breach of MGL's duty of care.

(ECF No. 86, pp. 7–8).

The proper time to provide a legally supported argument was at summary judgment. MGL now, with the assistance of new counsel retained after the completion of the trial, provides the Court with numerous, non-binding, cases that it argues supports the proposition that motor carriers do not have a nondelegable duty to properly maintain their vehicles. *See e.g. Thompson v. Brisk Transportation, L.P.,* No. WDQ-06-CV-1968, 2007 WL 9710320, at *5 (D. Md. Aug. 24, 2007) ("[Defendant] did not breach its duty to inspect because its 120-day preventative maintenance schedule complied with DOT regulations, and a more frequent inspection was not necessary. Therefore, [Plaintiff] has not established a violation of § 396.3(a).") *aff'd* sub nom*. Thompson v. Brisk Transp., LP,* 401 F. App'x 826

(4th Cir. 2010); *Holder v. Suarez*, No. 3:CV-14-1789, 2016 WL 593620, at *16 (M.D. Pa. Feb. 12, 2016); *Elkins v. Jank Krow Trucking*, LLC, No. 1:22-CV-4939-MLB, 2025 WL 4093527, at *2 (N.D. Ga. Oct. 31, 2025); *Tuong Vi Le v. Colonial Freight Sys., Inc*., 291 So. 3d 146, 149 (Fla. Dist. Ct. App. 2019).

The Undersigned is bewildered as to why Defendant decided to wait until over a year past the summary judgment deadline, and after a week-long jury trial to decide to research this issue and provide competent argument. Nonetheless, the Court considered Defendant's argument and maintains its ruling made at summary judgment. While the FMCSRs do not require a motor carrier to directly perform its inspections, "[i]t is the responsibility of the motor carrier … to ensure that all parts and accessories on commercial motor vehicles intended for use in interstate commerce for which they are responsible are maintained at, or promptly repaired to, the minimum standards …" 49 C.F.R. § 396.17(g). This Court declines to find the law states a motor carrier can close its eyes to a defect, of which Plaintiff provided expert testimony at trial that the lack of cross bracing was readily apparent by a visual inspection for approximately 90 trips prior to Plaintiff's accident, simply by the virtue that the repair had been completed by a third party repairer.

MGL next argues that it is entitled to judgment as a matter of law because it complied with FMCSR 396.11(a) as landing gear is not a specifically enumerated item which requires daily inspections. 49 C.F.R § 396.11(a)(1) states:

> (a) Equipment provided by motor carrier.
> (1) Report required. Every motor carrier shall require its drivers to report, and every driver shall prepare a report in writing at the completion of each

> day's work on each vehicle operated … The Report shall cover ***at least*** the following parts and accessories:
> (i) Service brakes including trailer brake connections;
> (ii) Parking brake;
> (iii) Steering mechanism;
> (iv) Lighting devices and reflectors;
> (v) Tires
> (vi) Horn;
> (vii) Windshield wipers;
> (viii) Rear vision mirrors;
> (ix) Coupling devices;
> (x) Wheels and rims;
> (xi) Emergency Equipment

49 C.F.R. § 396.11(a)(1) (emphasis added).

MGL argues that because landing gear is not specifically identified on this list, FMCSR 396.11(a) did not require its driver to inspect the landing gear or cross bracing and thus MGL did not breach any duty. (ECF. No. 192, p. 9). MGL is correct that FMCSR § 396.11(a)(1) does not explicitly state landing gear. However, as Plaintiff points out, this list is nonexclusive. This section states that the report shall cover "at least" the listed parts and accessories. It further states that the report "must identify the vehicle and list *any defect or deficiency* discovered by or reported to the driver which would affect the safety of operation of the vehicle or result in its mechanical breakdown." 49 C.F.R. § 396.11(a)(2)(i) (emphasis added).

Additionally, Plaintiff presented testimony by expert Frank Smidler and Jay Zembower which supported his argument that MGL should have inspected the landing gear. Smidler testified that drivers "generally inspect the whole trailer," (Trial Tr. Vol 1, 133), and Zembower explained that the scope of safety of operation of this trailer required

a driver to perform an "overall inspection of the frame and the chassis and the cross members and accessories." (Trial Tr. Vol. 1, 133). MGL's corporate representative also testified at trial that while she does not expect her drivers to detail every single part of the undercarriage of a trailer, she does expect that they check the landing gear to ensure it is operational. (Trial Tr. Vol. 3, 676–77). Defendant was permitted to and did present its own evidence that an inspection of the landing gear was not necessary or required. Accordingly, evidence supporting both positions was submitted to the jury for which a reasonable juror could have agreed with Plaintiff's contention.

MGL also argues that the "fatal flaw in Plaintiff's theory of liability is his assertion the landing gear was required to have cross bracing and, because it was required (so the argument goes), any reasonable carrier would know when it was missing." (ECF No. 192, p. 11). MGL further avers that Plaintiff failed to produce any evidence that cross bracing was actually required. *Id.* Rather, MGL argues that the instruction manual relied on by Plaintiff and his experts "merely recommends cross bracing; it does not require it," and that installers are responsible for ensuring the mounting structure and method are adequate for the intended purposes. *Id.* Further, MGL argues that Plaintiff presented no evidence that MGL's driver, Hatton, was required to know what type of cross bracing may have been required. *Id.*

The evidence presented at trial contradicts Defendant's arguments. Frank Smidler, a former design engineer at Stoughton, the manufacturer of the trailer, explained that all trailers such as this one carry diagonal cross bracing to stabilize the landing gear, and that

without it the trailer becomes unstable and topples under any size load. (Trial Tr. Vol. 1, 102–103). Smidler further answered "No, absolutely not," in response to whether a dry van trailer without that bracing is safe to load and described the trailer as "dangerous." (Trial Tr. Vol. 1, 103, 113). Jay Zembower, Plaintiff's expert on commercial-trailer inspection, maintenance, and repair, testified that the trailer had been unsafe ever since, stating the replacement legs were never braced, leaving each leg free to fold under the other like a deck of cards. (Trial Tr. Vol. 1, 189). Both Smidler and Zembower further testified that spotting this lack of cross-bracing required no engineering expertise and was "just a visual cue so easy that you can see if the braces are not there." (Trial Tr. Vol. 1, 113, 132).

Defendant understandably disagreed with this testimony. Accordingly, MGL was permitted to, and did, present these arguments to the jury. Each side presented evidence by which a reasonable juror could find cross bracing was required and easily observable, not required and hard to distinguish, or somewhere in between. The Court declines to invade the province of the jury regarding this matter.

Thus, for the reasons stated herein, Plaintiff presented sufficient evidence for a reasonable jury to find in his favor. Therefore, Defendant's Motion for a Judgment as a Matter of Law as to that finding is denied.

**(2) Defendant argues that Plaintiff failed to prove MGL acted recklessly toward him for purposes of punitive damages.**

Defendant argues that "Plaintiff's punitive damages claim fails as a matter of law because Plaintiff failed to establish, by clear and convincing evidence, that MGL's conduct

was reckless, willful, or wanton toward him and that such conduct caused his injuries." (ECF No. 192, p. 15).

In evaluating Defendant's argument, the Court is limited to determining if there is any evidence to support it, not supplant the jury's opinion with that of this Court. *See Willis v. Floyd Brace Co., Inc.,* 279 S.C. 458, 309 S.E.2d 295 (Ct.App.1983). Evidence of simple negligence alone will not support an award of punitive damages. *Cohen v. Allendale Coca–Cola Bottling Co*., 291 S.C. 35, 351 S.E.2d 897 (Ct.App.1986). Rather, there "must be evidence the defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Id.* at 40, 351 S.E.2d at 900. "Conduct is willful, wanton, or reckless when it is committed with a deliberate intention under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights. It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the tortfeasor." *Id.* "However, a defendant need not consciously realize that her acts invade the rights of another if a person of ordinary prudence would have come to that realization." *Hoskins v. King*, 676 F. Supp. 2d 441, 449 (D.S.C. 2009) (citation omitted). To argue the issue of punitive damages should not be submitted to the jury, a defendant needs to prove that there was no dispute of material fact that defendant's actions rose to a level of willful, wanton, or reckless conduct as a matter of law. *Id.* at 450.

Here, to support its argument that the punitive damages claim should not have been submitted to the jury, Defendant cites *Carter v. R.L. Jordan Oil Co.,* 301 S.C. 84, 85, 390 S.E.2d 367, 368 (Ct. App. 1990) (Negligence action involving plaintiff's allegation that

defendant's driver failed to make a proper pre-trip inspection and accordingly failed to discover a deficiency in a cotter pin.). In *Carter,* the South Carolina Court of Appeals reversed a judgment for punitive damages where the court found a defendant's omission was simple negligence. *Id.* In *Carter,* the court found no evidence from which to infer conscious wrongdoing by the defendant. *Id.* The *Carter* defendant had the trailer inspected and serviced nine days prior to the accident, and again four days before the accident. *Id.* The court held that while the testimony supported an inference that the driver did not check the cotter pins, there was no evidence, direct or circumstantial, that the driver saw a broken or missing cotter pin and with that knowledge took the truck on the road in conscious disregard of the safety of others. *Id.* 30 S.C. at 87, 390 S.E.2d at 368.

Conversely, Plaintiff cites *Garrison v. Target Corporation* which he argues undermines Defendant's argument that a tort claim built on unperformed inspections supports no more than a negligence-based recovery. 429 S.C. 324, 345, 838 S.E.2d 18, 29 (Ct. App. 2020), *aff'd in part as modified, rev'd in part,* 435 S.C. 566, 869 S.E.2d 797 (2022). In *Garrison,* the South Carolina Court of Appeals reversed a post-trial ruling invalidating the jury's punitive damages award in a case involving a retailer's failure to inspect its parking lot for dangerous debris. *Id.* The Court of Appeals found the issue of punitive damages was properly submitted to the jury because the plaintiff presented evidence showing the defendant's employees "were aware of the importance of inspecting and clearing the parking lot to keep it safe for customers" and those employees "should have been aware of the existence" of the syringe in the parking lot given the inspections

they claimed to be performing. *Id.* at 348, 838 S.E.2d at 30. The fact that the retailer was not actually aware of the syringe did not save it from punitive damages since its "failure to regularly inspect and clean its parking lot" could lead a reasonable jury to conclude "a person of ordinary reason and prudence would have been conscious" that the retailer's conduct could harm the customers using the parking lot. *Id.*

At trial, Plaintiff presented evidence that MGL used the trailer on approximately 90 separate trips from the time the trailer was deficiently repaired by Innovative. Accordingly, through at least 90 expected inspections, MGL failed to identify the readily observable flaw in the landing gear bracing. This differs greatly from *Carter* where the trailer had been inspected by a third party only four days before. Rather, it is more analogous to the reasoning in *Garrison* where doubt was cast on whether inspections were being properly completed, and whether failure to do so could lead to a finding that a reasonable person of ordinary reason and prudence would have been aware of potential harm to a plaintiff. This evidence, coupled with the evidence discussed above, could lead a juror to conclude a reasonable motor carrier in MGL's position would have realized that a failure to observe such a defect could endanger a plaintiff such as Mr. Avery. This Court cannot consider the jury's application of this evidence unreasonable just because it is a close call. Rather, that is the exact duty of a fact finder. To evaluate disputes of material fact and render a finding. Accordingly, Defendant's Judgment as a matter of law regarding the finding of recklessness is denied.

Defendant's renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) is denied.

**B. Motion for a New Trial**

Defendant also requested a new trial in the event this Court denied its Motion for Judgment as a Matter of Law. The Court addresses Defendant's arguments herein.

**(1) Plaintiff's expert Jay Zembower's testimony**

Defendant argues that during Phase I of the trial, the Court prejudicially erred in allowing "Plaintiff's expert Jay Zembower to testify a motor carrier is solely responsible for ensuring that the vehicles under its control are in safe operating condition and that defects have been corrected." (ECF No. 192, p. 17).

As an initial matter, in taking issue with Zembower's testimony, Defendant also argues that the court erred in instructing the jury that a violation of FMSCR 396.3(a) constitutes negligence *per se* and may be considered as evidence of recklessness. *Id.* at 22–23. This is Defendant's first time raising such an argument. "[U]nder Rule 51 of the Federal Rules of Civil Procedure, a party may not object to instructions given or not given to the jury unless the party objects before the jury retires." *Pogue v. Retail Credit Co*., 453 F.2d 336, 338 (4th Cir. 1972) ("Since the appellant failed to object as required … she cannot now complain."); *see also Karlen v. Ray E. Friedman & Co. Commodities,* 688 F.2d 1193, 1201 (8th Cir. 1982) ("The defendant's failure to challenge the substance of the damages instruction before it was submitted to the jury prohibits it from thereafter raising that

objection."); *Don Kemper Co. v. Beneficial Standard Life Ins. Co.*, 425 F.2d 221, 222 (3d Cir. 1970).

Nonetheless, even if Defendant were to have made a timely objection to the Court's instruction and provided the legally supported argument it has now developed, the Court's instruction would not have changed. Defendant now argues that a violation of FMSCR 396.3(a) does not constitute negligence *per se.* In so arguing, Defendant cites persuasive, non-binding, authority of courts which determined that FMSCR § 396.3(a) is not an appropriate basis for a negligence *per se* claim because it does not establish a specific standard of care. (ECF No. 192, p. 22) (citing *Thompson,* 2007 WL 9710320, at *6; *Omega Contracting, Inc. v. Torres,* 191 S.W.3d 828, 843 (Tex. App. 2006)).

Conversely, Plaintiff cites *McKewown v. Rahim* wherein the district court found FMSCR § 396.3(a) is the type of regulation that may form the basis of a negligence *per se* claim. 446 F. Supp. 3d 69, 76 (W.D. Va. 2020) ("The court believes [49 C.F.R. §396.3(a)] is the type of regulation that may form the basis of a negligence *per se* claim in Virginia. A requirement that motor carriers keep their vehicles in safe working order, specifically emphasizing the maintenance of parts that affect the safety of operation, suggests that this regulation was intended to protect members of the driving public, including the [plaintiffs], from unsafe commercial vehicles like [defendant's].").

While not every administrative regulation can be used to support a negligence *per se* claim, a plaintiff must only show that (1) the regulation's essential purpose is to protect from the kind of harm he has suffered; and (2) he is a member of the class of persons the

regulation is intended to protect. *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 103, 374 S.E.2d 910, 914 (Ct. App. 1988). "If the plaintiff makes this showing, he has proven the first element of a claim of negligence … [i]f he then shows that the defendant violated the statute, he has proven the second element of negligence." *Id.* 297 S.C. at 103, 374 S.E.2d at 915.

Here, this Court agrees with the *McKeown* court that 49 C.F.R. 396.3(a) is the type of regulation that may form the basis of a negligence *per se* claim. A regulation that requires a motor carrier to keep its vehicles in safe working order suggests that the regulation was intended to protect members of the public that engage with these vehicles, such as Mr. Avery. Accordingly, Defendant's argument for a new trial based on the court's negligence *per se* instruction is denied. *See also Rhodes v. Lawrence,* 279 S.C. 96, 97, 302 S.E.2d 343, 344 (1983) ("a jury question as to punitive damages was clearly presented given the well settled rule that a showing of a statutory violation can be evidence of recklessness and willfulness."); *Ravan v. Greenville Cnty.*, 315 S.C. 447, 458, 434 S.E.2d 296, 303 (Ct. App. 1993).

Further, even if the Court erred in giving this instruction, the error was harmless. The jury heard extensive evidence that MGL breached its common-law duties apart from any federal regulation. Thus, the jury had multiple legally sufficient grounds on which to find MGL negligent separate and apart from negligence *per se.*

Next, the Court turns to Defendant's argument regarding Zembower's testimony. Despite Plaintiff's argument otherwise, the Court agrees that Defendant's objections at trial

were sufficient to preserve their arguments regarding portions of Zembower's testimony. Nonetheless, Defendant mischaracterizes what was permitted by this Court regarding Zembower's testimony. Defendant argues that Zembower was permitted to provide opinion testimony, essentially legal analysis, regarding whether a motor carrier is solely responsible for ensuring that vehicles under its control are in safe operating condition and that defects have been corrected. Relevant to this analysis is the below guidance related to FMCSR § 396.3 which states:

> Question 3: Who has the responsibility of inspecting and maintaining leased vehicles and their maintenance records?
>
> Guidance: The motor carrier must either inspect, repair, maintain, and keep suitable records for all vehicles subject to its control for 30 consecutive days or more, or cause another party to perform such activities. The motor carrier is solely responsible for ensuring that the vehicles under its control are in safe operating condition and that defects have been corrected.

62 Fed. Reg. 16,427 (Apr. 4, 1997).

MGL's objection arises out of the portion of Zembower's testimony wherein he read the Federal Motor Carrier Safety Administration's guidance. After Plaintiff moved to qualify Zembower as an expert, the Court excused the jury to discuss MGL's objection. (Trial Tr. Vol. 1, 174–175). Defense counsel argued that it would be improper for Zembower to testify as to the meaning of the FMCSR and the Regulatory guidance. (Trial Tr. Vol. 1, 175–178). The Court ruled the following regarding Defense counsel's objection: "I'll let him read the interpret[ive] guidance, but he cannot purport to interpret it or explain it or say in other words, this means … He can read anything that's in the regulation or the interpretive guidance and read it only." (Trial Tr. Vol. 1, 180). Accordingly, this Court did not permit Zembower to argue the merits of the law. Rather, Zembower was permitted to

read, with the words being read displayed on a screen for the jury to view, what the text of FMCSR § 396.3(a) said along with the interpretative guidance discussed above. Defendant was also free to question Zembower about this guidance and did so. Defense counsel elicited testimony from Zembower regarding the following statement from the above guidance, "the motor carrier must either inspect, repair, maintain, and keep suitable records … or cause another party to perform such activities." (Trial Tr. Vol. 1, 210). To the extent Defendant argues that Zembower went beyond the limitations ordered by the Court, no contemporaneous objection was made to preserve such an argument for review. Therefore, the Court did not allow Zembower to provide his own legal analysis regarding the responsibility of motor carriers.

Even if allowing Zembower's testimony was in error, this error was harmless. No evidentiary error may be used to seek a new trial or alter a judgment "[u]nless justice requires." Fed. R. Civ. P. 61. An error is harmless when it can be determined "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021). Here, MGL's objection to a few moments of testimony in a weeklong trial wherein a host of evidence was presented to support the jury's verdict does not point to a finding of prejudice. Accordingly, any error in admitting this testimony was harmless.

**(2) Absence of an "intervening cause" jury charge**

Defendant argues that this Court erred because it did not instruct the jury as to an intervening-cause defense but instead instructed the jury that MGL's defense was a general denial defense. During trial, the Court held a comprehensive charge conference to discuss the jury charges. The parties were provided with this Court's proposed jury charges prepared using this Court's commonly used charges as well as the parties' proposed jury charges. Both parties were instructed to lodge their specific objections to any additions or omissions in the jury charge. The Court addressed all raised objections and dealt with them in due course. (Trial Tr. Vol. 4). The exclusion of Defendant's requested charge No. 18 which it refers to as an "intervening cause" charge was not raised despite the ample opportunities this Court gave for objections. Defendant argues that because it requested a charge to include a defense on intervening cause, that is sufficient to constitute an objection. (ECF No. 205, p. 10). Not so. Even if a comprehensive charge conference was not held to address any objections to this Court's proposed charges and the docket were viewed in isolation, the presence of the requested charge, (ECF No. 162, p. 7), is not a sufficient objection.

"A party who objects to an instruction *or the failure to give an instruction* must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1) (emphasis added). "[U]nder Rule 51 of the Federal Rules of Civil Procedure, a party may not object to instructions given or not given to the jury unless the party objects before the jury retires.".*Pogue v. Retail Credit Co.*, 453 F.2d 336, 338 (4th

Cir. 1972) ("Since the appellant failed to object as required … she cannot now complain."); *see also Karlen v. Ray E. Friedman & Co. Commodities,* 688 F.2d 1193, 1201 (8th Cir. 1982) ("The defendant's failure to challenge the substance of the damages instruction before it was submitted to the jury prohibits it from thereafter raising that objection."); *Don Kemper Co. v. Beneficial Standard Life Ins. Co.*, 425 F.2d 221, 222 (3d Cir. 1970).

However, even if Defendant had timely objected to the absence of this charge, and if this Court were in error for excluding the charge, the exclusion would be mere harmless error. The charge requested by Defendant was duplicative of this Court's charges pertaining to proximate causation. Accordingly, Defendant cannot point to any prejudice suffered from the absence of this charge.

**(3) Dr. Lehman's testimony**

Defendant argues that the Court prejudicially erred in allowing Dr. Lehman, Plaintiff's treating physician, to opine as to Plaintiff's history of medical complaints, the cause of his injuries, and future treatment. (ECF No. 192, p. 24). Defendant avers that because Plaintiff disclosed Dr. Lehman as a treating physician, not as a proffered expert who would testify as to causation, past medical history, and future medial treatment, it was impermissible for the Court to allow Dr. Lehman to testify as to matters outside of his disclosed opinions and outside his role as Plaintiff's treating physician. *Id.* at 25. Accordingly, Defendant argues that the broad testimony elicited by Plaintiff concerning historical medical records, the significance of Plaintiff's preexisting lumbar conditions,

accident-related causation, future treatment, spinal cord stimulation, ablation-related care, and disability was a prejudicial error.

The crux of Defendant's argument is that Lehman was disclosed as a treating physician, which is treated as a hybrid fact/expert witness under Fed. R. Civ. P. 26(a)(2)(B) and (C). Rule 26(a)(2)(B) requires that witnesses who are "retained or specially employed to provide expert testimony" must provide a comprehensive written report. However, treating physicians are generally exempt from the written report requirement in Rule 26(a)(2)(B). *Wickersham v. Ford Motor Co.*, No. 9:13-CV-1192, 2016 WL 5349093, at *3 (D.S.C. Sept. 26, 2016). But, if a party wants to present opinion testimony through a physician, Rule 26(a)(2)(C) mandates that the party "disclose: (i) the subject matter on which the witness is expected to present evidence under [Fed. R. Evid. 702, 703, or 705]; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022).

Thus, Defendant argues that because Lehman offered testimony developed beyond the observations and opinions he obtained by treating Plaintiff, he was required to comply with the above stated requirements. Conversely, Plaintiff argues that he did comply with pre-trial disclosures for Lehman because he disclosed that Lehman was to "testify consistently with the medical records and 'render opinions regarding causation and the extent of the Plaintiff's injuries.'" (ECF No. 199, p. 28 (citing ECF Nos. 3 & 60)). Thus,

Plaintiff argues that Lehman testifying regarding opinions, causation, and the extent of Plaintiff's injuries would clearly involve the testimony provided by Lehman.

Here, Plaintiff's pre-trial disclosure of Lehman was likely deficient because it did not contain a summary of facts and opinions to which Lehman was expected to testify. Nonetheless, the nondisclosure was harmless. "[T]o determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 597 (4th Cir. 2003).

The surprise factor favored admission of the evidence. While Defendant argues they were blindsided by Lehman's testimony, that argument is undercut by two facts. First, Defendant was made aware by Plaintiff's disclosure that Lehman was a hybrid witness that would be testifying as to causation and the extent of Plaintiff's injuries. Thus, they had some indication his testimony may go beyond the scope of simply recounting an office visit. Second, as discussed in more detail below, the testimony elicited from Lehman was duplicative of other facts and evidence provided at trial. Thus, Defendant was able to perform effective cross examination of Lehman because it was aware of the facts and evidence from which he was relying on. The ability for the party to cure the surprise also

weighed in favor of admission because Defendant was able to effectively cross examine Lehman considering it was aware of the evidence of which he was testifying about. Defendant also makes note of how it "had to immediately cross-examine Dr. Lehman without so much as a brief recess." (ECF No. 205, p. 13). No recess was ever requested.

The third factor, the extent to which allowing the evidence would disrupt the trial, also weighed in favor of admission. Defendant argues that Lehman's testimony necessitated extensive evidentiary arguments from the parties and opened the door to voluminous testimony about Plaintiff's medical history. Such a brief argument in a trial that was ahead of schedule, and indeed concluded a day earlier than anticipated, did not significantly disrupt the trial. The fourth factor, the importance of the evidence, also weighed in favor of admission. Plaintiff's medical history was a significant issue throughout the trial and evidence relating to such was clearly important.

The final factor, the non-disclosing party's explanation for its failure to disclose, likely weighed in favor of excluding the evidence as Plaintiff did not provide an explanation for why this information was not disclosed. However, a balancing of the five factors discussed above ultimately weighed in favor of admitting Lehman's testimony. Accordingly, admitting Dr. Lehman's testimony was not erroneous.

Regardless, any possible error from this Court's decision to admit Lehman's testimony was harmless. No evidentiary error may be used to seek a new trial or alter a judgment "[u]nless justice requires." Fed. R. Civ. P. 61. An error is harmless when it can be determined "with fair assurance, after pondering all that happened without stripping the

erroneous action from the whole, that the judgment was not substantially swayed by the error." *Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021). Further, erroneously admitted evidence likely does not involve the prejudice required to justify a new trial if it was just a small portion of the trial or if the same substantive point for which the disputed evidence was offered was made by other evidence in the record. *Id.* 997 F.3d at 561.

Here, Lehman's testimony was cumulative of other evidence properly before the jury. Lehman's opinions on causation, permanency, work capacity, and future care were also presented through Dr. Milam, Ashley Johnson, and Defendant's expert, Dr. Peelle. Accordingly, any possible error in admitting Lehman's testimony was harmless.

**(4) Compensatory Damages Verdict**

Defendant argues that the compensatory damages verdict was so grossly excessive as to indicate passion, whim, or prejudice. (ECF No. 192, p. 29). South Carolina law requires the court to "grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives." *Vinson v. Hartley*, 324 S.C. 389, 404, 477 S.E.2d 715, 723 (Ct. App. 1996). Defendant argues the compensatory award of $7,480,000.00 meets this standard.

Plaintiff's economic damages expert Dr. Raymond Sauer calculated the present-day value of Plaintiff's total financial loss to be between $1,776,434.23 and $2,486,611.23. Thus, Defendant presents that "even under the most favorable economic model, the jury

awarded Plaintiff $4,993,388.77 in non-economic damages." (ECF No. 192, p. 29). Defendant avers that such a large amount reflects that the jury returned "a grossly disproportionate compensatory award, infected by improper considerations of passion, whim, and prejudice." *Id.* at 30. "In a personal injury case, the amount to be awarded for the injury and any resulting pain and suffering cannot be determined with mathematical precision and is necessarily a matter of judgment on the facts of each case which must be left to the jury's discretion." *Cohen v. Allendale Coca-Cola Bottling Co*., 291 S.C. 35, 40, 351 S.E.2d 897, 900 (Ct. App. 1986).

Plaintiff presented significant evidence of his change in circumstances from before and after the accident. While MGL certainly made its arguments at trial that much of the pain and discomfort that Plaintiff is suffering today was a result of preexisting medical conditions, that evidence did not compel the jury to agree. Further, there is no indication that this jury's award for intangible loss is out of bounds with those awarded by other South Carolina juries. *See e.g. Cohen v. Allendale Coca-Cola Bottling Co.*, 291 S.C. 35, 39, 351 S.E.2d 897, 899-900 (Ct. App. 1986) (upholding compensatory damages award where the damages awarded were one thousand times the plaintiff's medical expenses); *Scott v. Porter*, 340 S.C. 158, 170–71, 530 S.E.2d 389, 395–96 (Ct. App. 2000) (affirming compensatory damages award of $600,000 in a survival action where evidence showed only $85 in medical bills).

Accordingly, Defendant's motion for a new trial on this ground is denied.

**(5) Ability to pay**

Defendant argues that during Phase II of trial, the Court erred by precluding defense counsel from fully discussing MGL's ability to pay.

In discussing argument for Phase II of this trial, there was much exchange regarding what evidence of bankruptcy would be allowed, and how the discussion of bankruptcy would affect the admissibility of evidence regarding insurance.[4] After a lengthy colloquy, Defense counsel stated the following regarding his intention to use evidence of bankruptcy:

> Mr. Diegel: So I don't think it's unfair to permit me to say "MG Logistics is in bankruptcy, and you should consider that as one of the factors in making your punitive damage consideration here, ladies and gentlemen." I'm not going to say that they have no ability to pay because that's not what the factors indicate. *But the very fact of bankruptcy* indicates that they have trouble paying.
>
> …
>
> The Court: After much debate, here's my ruling. I'm going to take judicial notice of the bankruptcy filing. And Mr. Diegel, in your argument, when you're going through the factors, you may say, "As you know, as you heard from the judge, my client is in bankruptcy," period. No further discussion."
>
> Mr. Diegel: Yes, sir.
>
> The Court: No comment about what that means. Just one sentence, "We're in bankruptcy." End of discussion. The plaintiff's objection to that is noted, and if you want to object, your objection is noted as well.
>
> (Trial Tr. Vol. 5, pp. 946–47).

---

[4] This Court held a lengthy discussion regarding the admissibility of evidence in Phase II of the trial in which all parties had ample opportunity to raise objections and proffer evidence. (Trial Tr. Vol. 5 pp. 910–947).

Thus, the Court did limit Defendant's discussion of the bankruptcy issue. Counsel was limited to confirming that MGL was in bankruptcy but not permitted to state that bankruptcy completely barred any ability for MGL to pay as that may have necessitated bringing in evidence of the existing insurance policy. Defendant never once indicated an intention to present any other evidence regarding MGL's ability to pay such as its net worth. Defendant had no witnesses or other evidence to present regarding MGL's ability to pay. Defendant never offered any evidence for Phase II of this trial or proffered any evidence it felt was barred by the Court's ruling. In fact, the only evidence Defendant presented was the bankruptcy notice of which this Court took judicial notice. Had Defendant presented additional evidence for this Court to review regarding MGL's ability to pay, the Court would have been more than happy to hear argument on the admissibility of such evidence. Defense counsel may not now try to remedy ill-preparedness at trial by unreasonably expanding this Court's limited ruling and apply it to barring any evidence MGL had to present regarding its ability to pay, even if such evidence was prepared and in existence on the day of trial.

Accordingly, Defendant's argument for a new trial on this basis is denied.

### C. Motion for a New Trial *Nissi Remittitur*

Defendant argues that, if the Court does not grant Judgment as a Matter of Law, or a new trial, the Court should grant a new trial *nisi remittitur.* (ECF No. 192, p. 31). Defendant argues that the jury award is unduly liberal and exceeds the amount reasonably supported by the evidence. To support this argument, Defendant argues that the costs

related to the spinal cord stimulator, approximately $241,000.00, should be removed from the calculation of total loss as expert testimony failed to render it necessary. Defendant presents no substantive argument regarding the spinal stimulator. Accordingly, the Court will not re-address its ruling wherein it admitted evidence regarding the spinal stimulator at trial. As discussed above, even if the $241,000.00 were removed from the calculation of total loss, there is no indication that this jury's award for intangible loss is out of bounds with those awarded by other South Carolina juries.

Defendant has not shown that the verdict was excessive such that the Court has compelling reasons to invade the jury's province on damage determinations. Accordingly, Defendant's motion for a new trial *nisi remittitur* on this ground is denied.

**D. Post-Judgment Review of Punitive Damages**

Defendant argues that a post-judgment review supports a determination that the punitive damages award should be set aside. (ECF No. 192, p. 32).

"[U]nder South Carolina law, a trial court's review of punitive damages is essentially a four-step process." *Cantrell v. Target Corp.*, No. CV 6:06-2723, 2009 WL 10678353, at *10 (D.S.C. May 15, 2009). First, the Court must determine whether the defendant's conduct rose to a level of willfulness, wantonness, or recklessness.[5] *Id.* Second, the Court must conduct a post-trial review of the punitive damages award. *See Gamble v. Stevenson,* 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991); S.C. Code Ann. § 15-32-

[5] As discussed above, this Court finds Plaintiff provided sufficient evidence to submit this issue to the jury.

520(E). This review requires the Court to independently weigh the evidence bearing on reprehensibility, proportionality, ability to pay, and the other statutory and common-law factors. Third, the Court must evaluate the punitive damages award in accord with the United States Supreme Court's three guideposts to aid in deciding the constitutionality of punitive damages awards. *BMW of N. Am. v. Gore,* 517 U.S. 559, 568 (1996). This requires the Court to consider (1) the degree of reprehensibility of the defendant's misconduct; (2) the ratio of the actual or potential harm suffered by the plaintiff to the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil or criminal penalties authorized for comparable misconduct. *Campbell*, 538 U.S. at 418; *Gore*, 517 U.S. at 574–75. Finally, the trial court may exercise its discretion and find the award excessive, even if constitutional. *Cantrell*, 2009 WL 10678353, at *13.

The jury returned a punitive damages award of $2,800,000.00. Upon review, the Undersigned finds that the jury's punitive damages award will stand as the evidence showed Defendant engaged in reckless misconduct leading directly to Plaintiff's injuries. Further, Defendant's conduct such as failing to adequately inspect the trailer and observe the obvious defect for over 90 trips, as well as not detecting the improper repair of the trailer while receiving photographs of the ongoing repairs is evidence of reprehensibility. While Defendant argues ability to pay sways strongly against allowing this award, the Court disagrees. Beyond this Court taking judicial notice of Defendant's bankruptcy, Defendant has provided no additional information regarding its ability to pay. The bankruptcy notice of which this Court took notice of indicates that Defendant is in Chapter

11 bankruptcy. Accordingly, without further evidence, of which Defendant has not provided, this Court cannot conclusively find that the ability to pay element weighs against this punitive damages award as Defendant claims. Further, this evidence of bankruptcy was presented to and considered by the jury. Additionally, the ratio between punitive damages and the compensatory damages is 1:2.67—well within the permitted ratio under both state and federal law.

Accordingly, upon consideration of all Defendant's arguments, (ECF Nos. 192, pp. 32–35, 205, p. 15), and applying the required post-judgment review of punitive damages, Defendant's request that the jury's punitive damages award be set aside is denied. *Cantrell v. Target Corp.*, No. CV 6:06-2723-BHH, 2009 WL 10678353, at *23 (D.S.C. May 15, 2009) ("The Court recognizes the very real possibility that the Fourth Circuit may view this case quite differently. But, this trial was notable for its propriety. There was no evidence of jury prejudice or malfeasance. The jurors were dutiful and attentive in all respects. They rendered what was surely, in their estimation, a reasonable and responsible judgment. Therefore, to the extent the Court has seen a possible accommodation of the award under applicable law it will decline the invitation to interject itself to affect it.").

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Judgment as a Matter of law or, in the alternative for a New Trial Absolute, or alternatively a New Trial *Nisi Remittitur*, (ECF No. 192), is denied.

IT IS SO ORDERED.

August 19, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge